United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA TRANQUILLA,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, LANCE GREENFIELD, TREVOR ADAMS, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: CV-11-04763 JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Joshua Tranquilla alleges that San Francisco Parking Control Officer ("PCO") Trevor Adams falsely reported that Plaintiff was involved in a hit and run with Adams. Plaintiff further alleges that the City and County of San Francisco ("CCSF") and Adams's supervisor Lance Greenfield are liable for maintaining policies, practices, and customs that resulted in the violation of his rights. He makes claims under 42 U.S.C. Section 1983 for unlawful seizure, malicious prosecution and First Amendment retaliation. Defendants now move for summary judgment on all of Plaintiff's claims. (Dkt. No. 48.) Upon careful consideration of the parties' submissions, the entire record of the case, and the arguments of counsel at a hearing held on January 23, 2014, the Court GRANTS Defendants' motion.

**SUMMARY JUDGMENT EVIDENCE**

This action arises from a confrontation that occurred between Tranquilla and Adams on December 28, 2010. Plaintiff was driving to work in San Francisco when he pulled into a five-minute loading zone to check his email. (Dkt. No. 59 ¶ 2.) After a few minutes, Adams pulled up alongside Plaintiff in a parking enforcement vehicle, honked, and gestured for Plaintiff to move. (*Id.* ¶ 3.) Plaintiff pointed to his watch indicating that he had more time in the five-minute zone. (*Id.*) Adams began to write Plaintiff a ticket, but when Adams continued to gesture for Plaintiff to move, Plaintiff flipped Adams off, and pulled out, driving south on Spruce. (*Id.*)

Plaintiff then made a U-turn, and headed north on Spruce. (*Id.* ¶ 4.) He was travelling at about five to ten miles per hour. (Dkt. No. 53-2 at 87:10.) As Plaintiff approached Adams from the opposite direction, Adams made a sudden and illegal U-turn directly into the path of Plaintiff's vehicle. (Dkt. No. 59 ¶ 4.) Plaintiff honked his horn, and then Adams suddenly slammed on his brakes. (*Id.*) Plaintiff was unable to avoid colliding with Adams. (*Id.*) There was a "crunch" sound when the vehicles collided. (Dkt. No. 53-2 at 100:20.)

Both vehicles came to a stop, and Adams and Plaintiff argued for a few minutes. (Dkt. No. 25 ¶ 6.) Plaintiff spent about one to two minutes inspecting each vehicle. (Dkt. No. 53-2 at 120:12-14.) Plaintiff noticed that the license plate holder on Adams's vehicle was cracked, but the crack did not appear to be new. (Dkt. No. 59 ¶ 6.) He also noticed that the bumper was damaged and had white paint marks on it. (Dkt. No. 53-2 at 115:15-18.) Based on the speed of the collision, the color of the paint marks, and his knowledge about vehicles, Plaintiff believed that the damage could not have been caused by his black vehicle. (*Id.* at 117:16-21.) Plaintiff also noticed that his license plate had been bent. (*Id.* at 115:2-4.) Only when Plaintiff removed the license plate a few days later, did he notice that his bumper had been cracked. (*Id.* at 137:13-17.)

While Plaintiff and Adams were still outside of their vehicles, Adams used his radio to call in to the tow desk and inform them of the collision. (Dkt. No. 53-3 at 53:3-4.) Adams did not tell Plaintiff that police were on their way. (*Id.* at 54: 19-21.) Nor did he tell Plaintiff

1  that he might be injured. (*Id.* at 54:3-4.) During this time, Adams was walking, waving his
2  arms, moving normally, and did not appear injured. (Dkt. No. 59 ¶ 7.) Plaintiff began to feel
3  that the situation could get out of control with Adam's anger and arm waving, so he left and
4  drove back to work. (*Id.*)

5  Police Officer Zhang heard a call on the police radio regarding the collision. (Dkt. No.
6  51 ¶ 2.) When City vehicles are involved in traffic accidents, specially trained officers are
7  dispatched to investigate. (*Id.*) Officer Zhang had received the special training so he
8  responded to the scene and conducted an investigation. (*Id.*) Plaintiff had already driven
9  back to work, so Zhang only spoke with Adams. Officer Zhang ran the license plate number
10 that Adams provided, and asked the Mountain View Police to contact the registered vehicle
11 owners, Brian and Julia Goodwin. (*Id.* ¶ 5.) Officer Zhang then forwarded a written report to
12 SFPD's hit and run detail. (*Id.* ¶ 7.)

13 Police Inspector Cook was assigned to investigate the collision. (Dkt. No. 19 ¶ 3.) On
14 December 29, Adams provided Cook with a written statement describing the collision. (*Id.* ¶
15 4.) On January 3, Cook spoke with Plaintiff's girlfriend, Julia Goodwin. (*Id.* ¶ 5.) As
16 requested, Plaintiff called Cook, and informed him that he had done nothing wrong. (Dkt.
17 No. 25 ¶ 7.) Nonetheless, Cook requested that Plaintiff provide a written statement. (*Id*.) On
18 January 5, Plaintiff provided a written account of the incident to Inspector Cook. (Dkt. No.
19 53-2 at 140:17-18.) Cook cited Plaintiff for a misdemeanor hit and run and referred the case
20 to the District Attorney's Office for prosecution. (Dkt. No. 19 ¶ 5.)

21 The District Attorney charged Plaintiff with hit and run with injury and hit and run
22 causing property damage. (Dkt. No. 59 ¶ 8.) At trial, the judge dismissed the hit and run
23 with injury charge, and the jury acquitted Plaintiff of the hit and run with property damage
24 charge after deliberating for twenty minutes. (*Id.* ¶ 10.)

25 During the trial, Plaintiff learned that Adams had previously falsely accused another
26 person, Karen Najarro, of illegal conduct. (*Id.* ¶ 9.) Based on Adams's statements that
27 Najarro had run over his foot, Najarro was arrested and tried for a felony hit and run. (Dkt.
28 No. 60-7 ¶ 12.) Video footage directly contradicted Adams's accusation and Najarro was

3

acquitted. (*Id.* ¶ 13.) Najarro filed a civil action against the City and Adams. (Dkt. No. 60 ¶ 11.) The case was settled on December 27, 2010, the day before the incident between Adams and Plaintiff. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff brings four claims pursuant to 42 U.S.C. Section 1983: (1) seizure without probable cause, (2) malicious prosecution, (3) First Amendment right to be free from retaliation for the exercise of free speech, and (4) a *Monell* claim. Defendants previously moved for summary judgment on the sole issue of whether Adams was acting under color of law. (Dkt. No. 16.) Concluding that a reasonable trier of fact could find that Adams met the three "critical requirements" for acting under color of law, the Court denied Defendants' motion. (Dkt. No. 31 at 9.) Defendants now move for summary judgment on the merits of all of Plaintiff's claims.

## LEGAL STANDARD

The Court may grant summary judgment when, drawing "all reasonable inferences [and] resolv[ing] all factual conflicts in favor of the non-moving party," it finds "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case…" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendants, as the moving parties, have the burden of producing evidence negating an essential element of each claim on which they seek judgment or showing that Plaintiff cannot produce evidence sufficient to satisfy his or her burden of proof at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once Defendants meet that burden, Plaintiff, as the non-moving party, must show that a material factual dispute

4

exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998). Allegations alone are not sufficient to meet Plaintiff's burden; instead, Plaintiff must submit admissible evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). This evidence must be such that a reasonable trier of fact could return a verdict in Plaintiff's favor. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

## DISCUSSION

To prevail on his Section 1983 claims, Plaintiff must show that the alleged conduct both occurred "under color of law," and deprived Plaintiff of a constitutional or federal right. *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000). The Court has previously determined that a reasonable trier of fact could find that Adams was acting under color of law. The issue presented by Defendants' current motion is whether the record supports a finding that Plaintiff's constitutional or federal rights were violated. For the reasons explained below, it does not.

### I. Unreasonable Search or Seizure

Plaintiff sues Adams and his supervisor Lance Greenfield, along with CCSF, for an unreasonable search and seizure. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "[A] person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." *U.S. v. Mendenhall,* 446 U.S. 544, 553 (1980) (internal quotation marks and citation omitted). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.* at 554. A person is seized when he is "meant to be stopped by a particular law enforcement officer . . . and is so stopped." *U.S. v. Al Nasser*, 555 F.3d 722, 731 (9th Cir. 2007).

5

1 The defect in this claim is that neither Adams nor Greenfield seized Plaintiff.  Plaintiff 2 was never arrested and Adams did not order Plaintiff to stay at the scene, which, in any event, 3 he did not do.  The only potential seizure, apart from the prosecution, is the misdemeanor 4 citation issued by Inspector Cook.  But Inspector Cook is not a defendant.  Indeed, Plaintiff 5 conceded at oral argument that he does not in fact have a Fourth Amendment unreasonable 6 search and seizure claim separate from his malicious prosecution claim.  Summary judgment 7 on Plaintiff's Fourth Amendment seizure claim (First Cause of Action) is accordingly granted.

## II. Malicious Prosecution

Plaintiff also charges that Defendants maliciously prosecuted him in violation of his Fourth Amendment rights.  The elements of a malicious prosecution claim brought under Section 1983 incorporate state law.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987).  Under California malicious prosecution law Plaintiff must prove that the underlying prosecution: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice."  *Conrad v. United States,* 447 F.3d 760, 767 (9th Cir. 2006).  In addition, Plaintiff must overcome the presumption that the prosecutor exercised independent judgment in prosecuting the criminal charge.  "In the absence of evidence to rebut the presumption, the presumption [is] sufficient to require summary judgment."  *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986).

The criminal action was indisputably resolved in Plaintiff's favor.  And for purposes of this motion the Court will assume the evidence is sufficient to support a finding of malice.  The malicious prosecution claim nevertheless fails because there was probable cause as a matter of law and, in any event, Defendant has not rebutted the presumption of the District Attorney's exercise of independent judgment.

### A. Probable Cause

"If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated."  *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 875 (1989).

6

When the claim is based on a criminal prosecution, "the question of probable cause is whether it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime." *Johnson v. Ralphs Grocery Co.*, 204 Cal.App.4th 1097, 1105-06 (2012) (internal citations omitted). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). The inquiry is whether "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). When the state of the defendant's knowledge is "undisputed, it is the court which decides whether such facts constitute probable cause or not." *Sheldon Appel Co.*, 47 Cal.3d at 881; *see also Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164-65 (9th Cir. 2011) (concluding the record supported a finding of probable cause as a matter of law).

     Plaintiff's theory appears to be that Adams's initial reporting of the violation "caused" Plaintiff's prosecution. He does not, however, identify what information Adams conveyed to dispatch or the police that led to his prosecution. In particular, he does not identify any evidence that Adams accused Plaintiff of hit and run, let alone that he accused Plaintiff of committing a hit and run in violation of Vehicle Code Sections 20001 (accident causing injury) or 20002 (accident causing property damage). Instead, he cites to Officer Zhang's report identifying Plaintiff as the "Complainant" and checking the form box that states: "Complainant was advised by reporting officer to phone the Hit and Run Section 553-1641 if he/she wishes to prosecute criminally." (Dkt. Nos. 58 at 7; 60-3.) There is nothing in the record as to whether Adams telephoned the Section and asked that Plaintiff be prosecuted, or, if so, as to what he said. Even Adams's statement to Inspector Cook is not in the record. Nonetheless, the record at least supports an inference that Adams reported that Plaintiff was involved in a "hit and run." The record also mandates the conclusion, however, of probable cause to believe that Plaintiff was guilty of hit and run.

1    Under California Vehicle Code Section 20002, a driver of any vehicle involved in an
2 accident resulting in damage to property, including the vehicles, must immediately stop and
3 provide his or her personal information to the owner of the other vehicle involved. Cal. Veh.
4 Code § 20002. The undisputed facts establish that Adams had probable cause to believe
5 Plaintiff had left the scene of an accident resulting in damage to property. Adams and
6 Plaintiff collided at five to ten miles per hour. Adams was driving the GO-4 traffic
7 enforcement vehicle and Plaintiff was driving a full-size vehicle. When the two vehicles
8 collided, Plaintiff heard a loud "crunch" sound (Dkt. No. 53-2 at 100:18-22.) and thought to
9 himself, "I wonder how bad my car is hurt" (*Id.* at 103:15-17.); indeed, he was "hoping that
10 [his] vehicle wasn't completely damaged." (*Id.* at 103:22-23.) Upon inspecting the vehicles,
11 Plaintiff saw that the license plate on his vehicle was bent. (*Id.* at 113:11-25.) Plaintiff then
12 left the scene of the collision without providing any personal information to Adams. These
13 facts—which are based on Plaintiff's own testimony—are more than sufficient to support
14 probable cause. If the accident was of such a degree that Plaintiff "was hoping that his vehicle
15 was not completely damaged," it was reasonable as a matter of law for Adams to believe that
16 Plaintiff had left the scene of an accident causing property damage, especially since it is
17 undisputed that it bent Plaintiff's license plate and damaged the GO-4's rear bumper.
18    Plaintiff's insistence that he was unaware that he had caused any property damage
19 misses the point. The question is whether the undisputed facts known to Adams supported a
20 reasonable suspicion that Plaintiff had violated Vehicle Code Section 20002, that is, a
21 reasonable suspicion that there was property damage and that Plaintiff would have been aware
22 of such damage. Given the nature of the accident (a full-size car versus a parking control
23 vehicle), the sound of the accident as characterized by Plaintiff (a loud crunch), Plaintiff's
24 own acknowledgement that he thought his car might be damaged, and the actual evidence of
25 damage to the rear bumper, it was reasonable as a matter of law for a person with Adams's
26 knowledge to believe Plaintiff had left the scene of an accident that had resulted in
27 property damage. Indeed, Adams admitted that he later found his car's bumper had been
28 cracked in the accident; that is, that there was in fact property damage to his own car.

8

With respect to the Vehicle Code Section 20001 charge (leaving the scene of an accident resulting in injury to a person) on which the trial judge acquitted Plaintiff, Plaintiff argues that Adams could not have had probable cause to believe Plaintiff was aware of any injuries to Adams because Adams testified that he himself was not aware of any pain or discomfort until fifteen minutes after the accident, that is, until after Plaintiff left the scene. (Dkt. No. 58 at 8-9.) This argument fails at the start however, because there is no evidence that Adams specifically reported that Plaintiff had violated Vehicle Code Section 20001; thus, the Court need not inquire as to whether Adams had probable cause to believe Plaintiff had violated that particular hit and run statute. *See Ecker v. Raging Waters Group, Inc.,* 87 Cal. App. 4th 1320, 1332 (2001) ("The issue is whether it was objectively reasonable to suspect [the plaintiff] had committed a crime. It was. Determination of the crime(s) to be charged is authority properly vested in a prosecuting agency."). Plaintiff suggests that Adams is nonetheless liable for malicious prosecution because there is nothing in the record that proves that prior to Plaintiff's criminal trial Adams disclosed that he did not recognize he might be injured until fifteen minutes after the accident. There is also no case law that supports this novel theory.

Adams's lie about the cause of the accident, that is, that in fact Adams himself intentionally caused the accident, does not defeat probable cause. First, the Vehicle Code requires a party to an accident causing property damage or injury to provide his name and address regardless of who was at fault. Second, "a defendant who fabricates evidence still acts with probable cause if the defendant is aware of other evidence which would make it objectively reasonable to suspect the plaintiff's guilt." *Roberts*, 660 F.3d at 1164 (applying California malicious prosecution law). As explained above, the *undisputed* evidence as to Adams's knowledge is sufficient to establish probable cause that Plaintiff was guilty of hit and run.

At oral argument Plaintiff also appeared to argue that because Adams lied about the Najarro matter the Court must assume he is lying about the facts in this case. But a party cannot defeat summary judgment by simply arguing that the opposing party is lying; instead,

9

the party must offer admissible evidence that creates a genuine dispute of fact.  Adams's serious and material lies in the Najarro matter are admissible under Federal Rule of Evidence 404(b)(2) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake," but they are not admissible to show propensity to lie, that is, he lied then he must be lying now.  *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").  There is simply no admissible evidence in the record from which a reasonable jury could find that at the time Adams reported the accident and spoke to the police he knew that Plaintiff was not guilty of hit and run.  Moreover, the inquiry is objective, not subjective: the question is whether a person with Adams's knowledge would have probable cause, not whether Adams in fact believed there was probable cause to report Plaintiff's alleged crime.

### B. The Prosecutor's Independent Judgment

Even if there was not probable cause, the District Attorney's decision to file criminal charges breaks the chain of causation between Adams and the prosecution.  When a prosecutor files a criminal action, a presumption arises that the prosecutor exercised "independent judgment" in determining that probable cause existed for the charges.  *Beck v. City of Upland*, 527 F.3d 853, 862, 865 (9th Cir. 2008) (confirming the presumption set forth in *Smiddy v.Varney*, 665 F.2d 261, 266-67 (9th Cir. 1981)).  Thus, the "chain of causation between an arrest and prosecution" is broken by the prosecutor's independent judgment, thereby "immunizing investigating officers . . . from damages suffered after the complaint was filed." *Id.* (internal quotation marks omitted).  The presumption of independent judgment may be rebutted by Plaintiff's showing that "the independence of the prosecutor's judgment has been compromised." *Beck*, 527 F.3d at 862.  Examples of circumstances sufficing to rebut the presumption include: the prosecutor's reliance on false information, the police pressuring the prosecutor, and the prosecutor's mere reliance on the police record without exercising independent judgment. *Id.*  A plaintiff's account of the incident in question, by itself, does not

overcome the presumption of independent judgment.  *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994).

Plaintiff contends that summary judgment is inappropriate because Adams lied about the cause of the collision.  Plaintiff, however, has submitted no evidence that Adams's lie had any role in the District Attorney's decision to prosecute Plaintiff.  Adams merely reported the collision to dispatch, and described the collision to Officer Zhang.  Officer Zhang then made a police report that was automatically forwarded to Inspector Cook.  Inspector Cook subsequently obtained written statements from Plaintiff and Adams.  Based on his conversation with Plaintiff and the written statement, Inspector Cook issued the misdemeanor hit and run citation.  Inspector Cook then referred the case to the District Attorney's Office and the District Attorney then elected to file criminal charges.  There is no evidence that supports a finding that the District Attorney relied on Adams's characterization of the cause of the accident to charge Plaintiff; as set forth above the cause of the accident is irrelevant to liability under the statute.

Again relying on Adams's conduct in the Najarro matter, and in particular on his filing of a workers compensation claim there as he did here, Plaintiff suggests that Adams lied to the District Attorney about his injuries from the accident.  As explained above, however, Plaintiff may not rely upon Adams's bad conduct in the Najarro matter to show he lied about his possible injuries here.  *See* Fed. R. Evid. 404(b)(1).  Further, there is no evidence that the District Attorney prosecuted Plaintiff because of some lie Adams told the police or the District Attorney.  On the record before the Court, a reasonable trier of fact cannot find that Plaintiff has rebutted the presumption of independent judgment.

**III.   The First Amendment Retaliation Claim**

Plaintiff next alleges that Adams falsely reported the hit and run, and thus instigated the charges against Plaintiff, in retaliation for either Plaintiff flipping him off, or driving away before Adams completed writing the parking ticket.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking

11

1 out." *Hartman v. Moore,* 547 U.S. 250, 256 (2006). A First Amendment retaliation claim
2 requires Plaintiff to show three elements: "(1) that the plaintiff was engaged in
3 constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer
4 an injury that would chill a person of ordinary firmness from continuing to engage in that
5 activity; and (3) that the defendant's adverse action was substantially motivated as a response
6 to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d
7 1197, 1212 (9th Cir. 2000) (internal quotation marks and citations omitted).

8 When a plaintiff claims he was prosecuted in retaliation for an exercise of a First
9 Amendment right, the plaintiff must plead and prove that the defendant lacked probable cause.
10 *Hartman*, 547 U.S. at 265-66 (2006). "The requirement of no probable cause is necessary to
11 bridge the gap between the nonprosecuting government agent's motive and the prosecutor's
12 action . . ." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006) (internal
13 quotation marks and citation omitted). As set forth above, a reasonable trier of fact could not
14 find that there was a lack of probable cause for a misdemeanor hit and run. The probable
15 cause determination thus disposes of Plaintiff's First Amendment claim. *See Hartman*, 547
16 U.S. at 265. The evidence as set forth by Plaintiff suggesting that Adams was motivated at
17 least in part by a retaliatory animus does not change this result.

18 Plaintiff's First Amendment retaliation claim fails for a second reason: a reasonable
19 trier of fact could not find a causal connection between Plaintiff's exercise of his First
20 Amendment rights and the subsequent prosecution. "A plaintiff may not recover merely on
21 the basis of a speculative chill due to generalized and legitimate law enforcement initiatives."
22 *Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) (internal
23 quotation marks omitted). The desire to cause the chilling effect must be the but-for cause of
24 the defendant's actions. *Skoog*, 469 F.3d at 1231-32.

25 Plaintiff argues that Adams's falsification of the collision and the subsequent initiation
26 of the prosecution are evidence to support a claim of retaliation. Plaintiff fails, however, to
27 present evidence establishing a causal connection between the exercise of his First
28 Amendment rights and his subsequent prosecution for hit and run charges. It is undisputed

12

1    that PCOs are required to radio dispatch immediately when involved in accidents. The
2    determination of whether the SFPD becomes involved is made by dispatch. In light of the
3    undisputed requirement that Adams radio dispatch, a reasonable trier of fact cannot find that
4    any desire of Adams to "chill" Plaintiff's conduct was the "but-for" cause of Adams's having
5    reported the collision, thus prompting the prosecution. *Skoog*, 469 F.3d at 1231-32.

6    Plaintiff's citation to *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372 (9th Cir. 1990) is
7    unavailing. In *Duran*, the court held that because the plaintiff's "boisterous conduct" did not
8    give the defendant probable cause to detain him, the detention itself was likely predicated on
9    retaliation. *Id*. at 1377. Thus, because the officer might have "intended to hassle [defendant]
10   as punishment for exercising his First Amendment rights" summary judgment was
11   inappropriate. *Id*. at 1378. Here, however, Adams was engaged in the "generalized and
12   legitimate" requirements of his job when he reported the hit and run. *Mendocino Envtl. Ctr.*,
13   14 F.3d at 464. Unlike in *Duran*, Adams had cause, apart from retaliation, for reporting the
14   collision. Plaintiff fails to establish a genuine issue of material fact on the causation element
15   of his First Amendment retaliation claim.

16   **IV.    The *Monell* Claim**

17   Under Section 1983, "[a] supervisor may be liable . . . only if there exists either: (1) his
18   or her involvement in the constitutional deprivation, *or* (2) a sufficient causal connection
19   between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v.*
20   *Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (internal quotation marks omitted). Moreover,
21   "Government officials may not be held liable for the unconstitutional conduct of their
22   subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676
23   (2009). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead
24   that each Government-official defendant, through the official's own individual actions, has
25   violated the Constitution." *Id.*

26   Because none of Plaintiff's underlying Section 1983 claims survive Defendants'
27   motion for summary judgment, Plaintiff's final cause of action for failure to supervise must
28   also fail. Without a constitutional violation, there can be no basis for a finding of supervisory

liability.  *Jeffers*, 267 F.3d at 915.  Thus, the Court grants Defendant's motion for summary judgment on the *Monell* claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  February 7, 2014

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE